UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. JANE ROLLINSON, *et al.*, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | No. 2:16-cv-00447-LEW |
| BRIGHTON MARINE INC., *et al.*, | ) ) | |
| Defendants | ) | |

**ORDER ON MOTION TO STRIKE ANSWER RESPONSES
AND AFFIRMATIVE DEFENSES**

Citing Rule 8(b) of the Federal Rules of Civil Procedure, the United States of America requests that the Court strike the Defendants' answers to the extent that the Defendants assert in their Answers that documents described in the United States' allegations "speak for themselves; otherwise denied." United States' Consolidated Mot. to Strike Certain Responses and Affirmative Defenses at 1-9 (ECF No. 230). Additionally, the United States requests that the Court strike certain affirmative defenses because the defenses are unavailable or nonviable. *Id.* at 9-15. Defendants oppose the Motion to Strike. Defs. Consol. Opp'n (ECF No. 242).

**A.    "Speak for themselves; otherwise denied."**

The Defendants, in their Answers (ECF Nos. 210-215) to the United States' Complaint in Intervention (ECF No. 88), all admit that the parties' dispute involves a government program called the Uniformed Services Family Health Plan (USFHP), through

which the Department of Defense contracted with Defendants to serve as designated providers. *See* Answers ¶ 3. However, as to the particulars of the statutory framework, the terms stated in the contracts, and the substance of communications, Defendants routinely answer that the documents in question "speak for themselves; otherwise denied." *Id. passim.* The United States contends that this response is improper when it comes to allegations about Defendants' obligations under their contracts or the import of various communications. Defendants disagree, asserting that their responses are proper denials that also acknowledge that the contracts and other documents "exist." Defs. Consol. Opp'n at 4. In effect, Defendants assert that they deny only the United States' characterization or summation of the language and the alleged obligations that arise out of the contracts and related documents. *Id.* Based on this response, I interpret the Defendants' responses as akin to "denied; furthermore, the documents speak for themselves."

Given that the United States' allegations are designed to support an inference of liability based on a variety of contractual and other documentary premises, I conclude that the Defendants' responses are within the bounds of what qualifies as a denial "to the substance of the allegation[s]." Fed. R. Civ. P. 8(b)(2). Furthermore, I am not persuaded by the United States' contention that its discovery burdens will be unduly enhanced by the "speaks for itself; otherwise denied" responses. Nor is it apparent to me that any judicial economy will be achieved if I order the Defendants to amend their answers. In the absence of a convincing showing of prejudicial impact or consequential inefficiency, I decline to require the Defendants to revise their Answers. Furthermore, the Answers acknowledge the existence of the operative provisions by asserting that they speak for themselves. In

other words, the responses are not unqualified denials and, in that sense, do tend to simplify matters to a degree. Ultimately, the Defendants' acknowledgement of the documents combined with their denials of related implications and characterizations constitute fair responses for the purposes of this case, such that compelling amended answers would merely result in unnecessary delay and, likely, more pleadings-related carping, as if the Court might compel the Defendants to admit the accuracy of the characterizations made by the United States in the Complaint in Intervention.

**B.     Affirmative Defenses**

The United States argues that certain of Defendants' affirmative defenses should be stricken. "The court may strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). However, motions to strike affirmative defenses are disfavored "and will be granted only if it clearly appears that the plaintiff would succeed despite any state of facts which could be proved in support of defense." *F.D.I.C. v. Gladstone*, 44 F. Supp. 2d 81, 84-85 (D. Mass. 1999) (quoting *FDIC v. Eckert Seamans Cherin & Mellott,* 754 F. Supp. 22, 23 (E.D.N.Y.1990)). Still, often it proves "useful to consider the legal sufficiency of defenses to clarify the issues and perhaps narrow them." *Id.*

Defendants are generally expected to plead affirmative defenses in a manner that affords fair notice to the plaintiff of the nature of the defenses. Fair notice is not a plausibility standard and instead amounts to a requirement that defenses be set out in "general" terms. *See* 5 Wright & Miller's Federal Practice and Procedure § 1274 (4th ed.). "[T]he First Circuit has instructed that '[i]n determining whether general, non-specific language in a defendant's answer ... suffices to preserve an affirmative defense, an

3

inquiring court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated.'" *Colello v. Bottomline Techs.*, *Inc.*, No. 2:14-cv-00297-JAW, 2016 WL 471294, at *10 (D. Me. Feb. 5, 2016) (quoting *Williams v. Ashland Eng'g Co.*, 45 F.3d 588, 593 (1st Cir. 1995), *overruled on other grounds by Carpenters Local Union No. 26 v. U.S. Fidelity & Guar. Co.*, 215 F.3d 136 (1st Cir. 2000)).

I address each of the challenged defenses in turn.

### 1.  Laches

"A virtually unbroken line of authority . . . holds that a private defendant cannot assert laches against the government." *United States v. Hughes House Nursing Home*, *Inc.*, 710 F.2d 891, 895 (1st Cir. 1983).  *See also United States v. Thurston*, 346 F. Supp. 2d 215, 219 (D. Me. 2004) (discussing general principles). Defendants have identified authority, however, that laches may be asserted against the United States for the limited purpose of preventing an excessive prejudgment interest award based on significant delay associated with the government's assertion of its rights.  *See United States v. DynCorp Int'l LLC*, 282 F. Supp. 3d 51, 57 (D.D.C. 2017) (citing *West Virginia v. United States*, 479 U.S. 305, 311 n.3 (1987)).  The Defendants' assertion of laches is stricken in part.  Specifically, laches is stricken as a defense to liability.

### 2.  Estoppel and unclean hands

The "traditional doctrine of equitable estoppel does not apply fully in cases against the government." *Akbarin v. Immigration and Naturalization Service,* 669 F.2d 839, 842

4

(1st Cir. 1982). *See also Rosas v. United States Small Bus. Admin.*, 964 F. 2d 351, 360 (5th Cir. 1992) (holding that "claims for estoppel cannot be entertained where public money is at stake"). "At a minimum, the party raising the defense must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign." *United States v. Ven-Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir. 1985) (quoting *Akbarin*, 669 F.2d at 842). Affirmative misconduct means something more than "carelessness" or a bureaucratic "lack of artistry." *Id.* Here, the Answers simply assert the estoppel defense. Nowhere do Defendants assert estoppel premised on affirmative misconduct. Defendants' generic invocation of estoppel, without including a general allegation of affirmative misconduct, falls short of the general statement standard. The estoppel defense is therefore stricken.

Similarly, when it comes to the government, the unclean hands doctrine does not apply categorically, assuming it applies at all. *Bartko v. Sec. & Exch. Comm'n*, 845 F.3d 1217, 1227 (D.C. Cir. 2017). If a case is to be made, perhaps it would arise where "the public interest in ensuring that the Government can enforce the law free from estoppel [is] outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60-61 (1984). "Where courts have permitted equitable defenses to be raised against the government, they have required that the agency's misconduct be egregious and the resulting prejudice to the defendant rise to a constitutional level." *Bartko*, 845 F.3d at 1227 (quoting *SEC v. Elecs. Warehouse, Inc.*, 689 F. Supp. 53, 73 (D. Conn. 1988), *aff'd*, 891 F.2d 457 (2d Cir. 1989)). Once more, the Defendants' generic

invocation of unclean hands without a general statement concerning any egregious misconduct falls short and is therefore stricken.

### 3. Waiver/ratification

The waiver of a claim pressed by the United States, like the ratification of unauthorized acts that would have the effect of negating a claim, must be carried out by an officer with authority to compromise the claim. *United States v. DynCorp Int'l LLC*, 282 F. Supp. 3d 51, 56 (D.D.C. 2017); *United States v. Am. Health Found., Inc.*, No. 22-cv-2344, 2023 WL 7329506, at *3 (E.D. Pa. Nov. 7, 2023); *Fed. Trade Comm'n v. Green Equitable Sols.*, No. 2:22-cv-7107273, 2023 WL 7107273, at *2 (C.D. Cal. Sept. 29, 2023). "[A] waiver of sovereign authority will not be implied, but instead must be surrendered in unmistakable terms." *United States v. Cherokee Nation of Okla.*, 480 U.S. 700, 707 (1987) (internal quotations omitted). For purposes of the False Claims Act, the authorized officer is the Attorney General. *DynCorp Int'l LLC*, 282 F. Supp. 3d at 56; *United States v. Honeywell Int'l, Inc.*, 841 F. Supp. 2d 112, 115 (D.D.C. 2012).

If the Defendants maintain that the Attorney General waived the United States' right to pursue its FCA claim or ratified the alleged overpayments through clear and unmistakable action, they should articulate as much in general terms, not simply state "waiver" and "ratification" without any elaboration whatsoever. Insofar as that kind of waiver or ratification is concerned, striking the defense is in order. However, I decline to strike this particular defense in its entirety based on case law cited by Defendants suggesting that the concepts of waiver and ratification have been associated by some courts with defendants' efforts to negate proof of an element of the FCA claim, specifically

scienter. *See*, *e.g.*, *United States ex rel. Landis v. Tailwind Sports Corp.*, 308 F.R.D. 1, 5 (D.D.C. 2015). Although I am not convinced that negation of the scienter element based on the knowledge of government officials amounts to an "affirmative defense," let alone the specific affirmative defenses of waiver or ratification, I also do not see the harm in letting these affirmative defenses remain as to that issue because I fail to see any surprise or unfair prejudice lurking beneath the defenses.

### 4. *Contracts Disputes Act*

Defendants assert that the claims other than the FCA claim lie outside the jurisdiction of this Court and must be pursued in the Court of Federal Claims, under the Contracts Disputes Act of 1979 ("CDA"), 41 U.S.C. §§ 7103-04. However, the CDA is not applicable to claims "involving fraud," which includes FCA claims. *Id.* § 7103(a)(4)(B), (c)(1). Moreover, when related claims, such as breach of contract and so forth, arise out of the same operative facts as the FCA claim—in other words, involve alleged fraud—the jurisdictional bar of the CDA does not apply to the related claims either. *United States v. DynCorp Int'l*, LLC, 253 F. Supp. 3d 89, 114 (D.D.C. 2017); *United States v. First Choice Armor & Equip., Inc.*, 808 F. Supp. 2d 68, 80 (D.D.C. 2011); *United States v. Unified Indus., Inc.*, 929 F.Supp. 947, 950-51 (E.D.Va.1996); *see also United States v. Kellogg Brown & Root Services, Inc.*, No. 4:12-cv-4110, 2014 WL 1282275, at *11 (C.D. Ill. Mar. 31, 2014) (citing supplemental jurisdiction statute, 28 U.S.C. § 1367(a)). All the same, I decline to strike the CDA jurisdictional defense simply so that the jurisdictional question is preserved in the event that judgment should enter for Defendants on the FCA claim before trial. My declination of the request to strike this defense has no tendency to

expose the United States to unfair surprise or prejudice in terms of its pretrial discovery and trial preparation, so this concern is in any event more academic than material to the proceedings.

### 5. *Steward-wrong-party contention*

Brighton Marine asserts that the claims against it are "barred by failure to join an indispensable party, Steward, and its parents, subsidiaries, officers, directors, predecessors, and bankruptcy estate."  Brighton Marine Ans., 27th Aff. Defense (ECF No. 212).  The United States asks for this defense to be stricken as insufficient because, at most, Brighton Marine and Steward were joint tortfeasors and, consequently, the United States may pursue a full recovery against Brighton Marine, which, unlike Steward, also happens to have been the contracting party.  Brighton Marine rejects that contention on the grounds that Steward performed the contract and was the party that participated in the alleged wrongful conduct. Brighton Marine also asserts that the issue is factually and legally involved and should not be casually stricken based on preliminary impressions.  Once again, I find myself questioning whether the affirmative defense is needed, since the assertion underlying the defense appears to be more in the nature of "we didn't do what is alleged, Steward did," which might simply be preserved through a denial of the United States' allegations, rather than through an affirmative defense involving failure to join.  Still, the defense is stated in general terms that provide adequate notice and the issue may well involve factual and legal assessments.   For those reasons, I decline to strike the defense.

8

## CONCLUSION

The United States' Consolidated Mot. to Strike Certain Responses and Affirmative Defenses at 1-9 (ECF No. 230) is GRANTED IN PART and DENIED IN PART.  Laches is stricken as an insufficient defense solely in relation to the jury's liability determination. Estoppel and unclean hands are stricken as insufficient defenses as plead.  Waiver and ratification are stricken as insufficient defenses solely in relation to any waiver or ratification by the Attorney General or the Department of Justice.   The Motion is otherwise denied.

**SO ORDERED.**

Dated this 17th day of June, 2026.

/s/ Lance E. Walker
Chief U.S District Judge